IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TINEIMALO ADKINS JR., FED. REG. #9532-022, | ) ) | CIV. NO. 14-00156 LEK/KSC |
| | ) | ORDER DISMISSING FIRST AMENDED |
| Plaintiff, | ) | COMPLAINT IN PART |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID SHINN, STEVEN REISER, | ) | |
| CULLY STERNS, WILLIAM CLINE, | ) | |
| JOSEPH POTTS, ALAN URASAKI, | ) | |
| TREVOR LIDGE, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## ORDER DISMISSING FIRST AMENDED COMPLAINT

Before the court is *pro se* Plaintiff Tineimalo Adkins,

Jr.'s First Amended Complaint ("FAC"). *See* Doc. No. 14.

Plaintiff is a state inmate presently confined at the Federal

Detention Center-Honolulu ("FDC-Honolulu") awaiting trial in

federal court. *See United States v. Esera*, *et al.*, Cr. No. 13-

00860 LEK. Plaintiff alleges that FDC-Honolulu Warden David

Shinn, Captain Steven Reiser, Investigator Cully Sterns,

Counselor Joseph Potts, Chaplain Alan Urasaki, Nurse Trevor

Lidge, and Investigator William Cline violated his constitutional

rights. Plaintiff names Defendants in their official and

individual capacities, seeks compensation for his pain and

suffering, and requests a transfer from the special holding unit

("SHU") to the general population.

The court has screened the FAC pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915(A)(b)(1), and finds that it states a

cognizable claim for relief in part. Service is appropriate for Defendants Cline, Urasaki, and Lidge, as discussed below. Claims against Defendants Shinn, Reiser, Sterns, and Potts are dismissed.

## I. **STATUTORY SCREENING**

Federal courts must screen all civil actions brought by prisoners seeking redress from a governmental entity, officer, or employee, and dismiss a claim or complaint if it is frivolous, malicious, fails to state a claim, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2); 42 U.S.C. § 1997e(c)(1).

A complaint may be dismissed for failure to state a claim if it (1) lacks a cognizable legal theory; or (2) contains insufficient facts under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A sufficient complaint must plead "enough facts to state a claim to relief

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff
pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining
whether a complaint states a plausible claim for relief [is]
. . . a context-specific task that requires the reviewing court
to draw on its judicial experience and common sense." *Id.* at
679. Thus, "where the well-pleaded facts do not permit the court
to infer more than the mere possibility of misconduct, the
complaint has alleged — but it has not 'show[n]' — 'that the
pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P.
8(a)(2)).

The court must construe a *pro se* complaint liberally,
in the light most favorable to the plaintiff, and accept all
allegations of material fact as true. *See Erickson v. Pardus*,
551 U.S. 89, 94 (2007) (*per curiam*); *Hebbe v. Pliler*, 611 F.3d
1202, 1205 (9th Cir. 2010). A *pro se* prisoner's complaint is
"held to less stringent standards than formal pleadings drafted
by lawyers." *Erickson*, 551 U.S. at 94. Leave to amend should be
granted unless it appears that amendment is futile. *Lopez v.
Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

### III. <u>DISCUSSION</u>

Plaintiff sets forth eight claims, alleging retaliation, inadequate medical care, interference with the exercise of his religion, denial of the right to petition the government, due process, access to his attorney, and violation of FDC-Honolulu rules.

**A.    Elements of a Bivens Action**

Plaintiff alleges jurisdiction under 42 U.S.C. § 1983. Because he is a federal prisoner asserting claims against federal agents, however, the court construes his claims as brought pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).[1] *Bivens* "established that compensable injury to a constitutionally protected interest could be vindicated by a suit for damages invoking the general federal-question jurisdiction of the federal courts." *Butz v. Economou*, 438 U.S. 478, 486 (1978).

"Actions under § 1983 and those under *Bivens* are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991); *see also Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006) ("Though more limited in some respects . . .

---

[1] Plaintiff transferred from the Halawa Correctional Facility ("HCF") to FDC-Honolulu on or about September 24, 2013. He is awaiting trial on two federal racketeering charges related to USO gang activities, in violation of 18 U.S.C. §§ 1959(a)(3) and (b)(2); 18 U.S.C. § 1959-7473.F(4), in Cr. No. 13-00860 LEK.

a *Bivens* action is the federal analog to suits brought against state officials under [§ 1983].").  To sustain an action under *Bivens*, "a plaintiff must show '(1) that the conduct complained of was committed by a person acting under color of [federal] law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right.'"  *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009).

Because *Bivens* actions do not lie against the United States, its agencies, or its agents in their official capacity, *see FDIC v. Meyer*, 510 U.S. 471, 484–86 (1994); *Ibrahim v. Dept. of Homeland Sec.*, 538 F.3d 1250, 1257 (9th Cir. 2008), Plaintiff's claims against Defendants in their official capacities are DISMISSED.

**B. Counts I, II, III:  Retaliation Claims**

Plaintiff alleges that Defendants Shinn, Sterns, Reiser, and Cline retaliated against him by (1) refusing to move him from the SHU to general population (Count I); (2) failing to respond to his grievances (Count II); and (3) writing a disciplinary report against him for his participation in a hunger strike (Count III).

"Within the prison context, a viable [retaliation] claim . . . entails five basic elements: (1) An assertion that a [prison official] took some adverse action against an inmate (2)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his [protected] rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *see also Blaisdell v. Frappiea*, 729 F.3d 1237, 1242 (9th Cir. 2013) (stating that retaliation "actions need not be tethered to the speech or associational freedoms secured by [the First Amendment] . . . but can be based upon the theory that the government imposed a burden on the plaintiff more generally, 'because he exercised[d] a constitutional right'") (citations omitted). A prisoner must allege that he suffered some harm, since harm that is more than minimal will almost always have a chilling effect. *Id.*, 408 F.3d at 567-68 n.11; *see Gomez v. Vernon*, 255 F.3d 1118, 1127-28 (9th Cir. 2001). Plaintiff has the burden of pleading and proving the absence of legitimate correctional goals. *Pratt*, 65 F.3d at 806. A retaliation claim without an allegation of a "chilling effect" or other harm is not actionable. *See Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000).

### 1.   *Count I*

Plaintiff complains that Defendants Shinn, Sterns, Reiser, and Cline refuse to transfer him to general population because they consider him "a threat to the safety and security of the institution," based on the nature of his federal charges, and

another USO gang-member's assault on a guard four years ago in Arizona. FAC, Doc. No. 14, PageID #45.

Plaintiff admits that he has been in the SHU since his arrival at FDC-Honolulu, long before he filed grievances or this lawsuit. He does not allege Defendants housed him in the SHU for submitting grievances, petitioning the court, or other protected conduct, or that conditions worsened in the SHU after he filed his first grievance. Instead, he concedes that Defendants housed him in the SHU from the beginning, because they determined that he is a danger to security in FDC-Honolulu general population. Plaintiff sets forth no facts supporting a chilling effect on his protected conduct or that his placement in the SHU is retaliatory.

Plaintiff's statement of facts does not permit this court "to infer more than the mere possibility of misconduct" regarding his placement in the SHU. *Iqbal*, 556 U.S. at 678. That is, Plaintiff has not plausibly shown that he is entitled to relief. *Id.* Moreover, this court "must defer to prison officials' expert judgments" concerning the running of the prison. *Norwood v. Vance*, 591 F.3d 1062, 1066 (9th Cir. 2010). This "deference requires 'that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.'" *Id.* at 1066–67 (quoting *Whitley v. Albers*, 475 U .S. 312, 322 (1986)). A determination that an inmate poses

a threat to the facility is precisely the type of decision to which courts generally defer.

Finally, Plaintiff has no right to be housed in general population. *See Grayson v. Rison*, 945 F.2d 1064, 1067 (9th Cir. 1991) (holding prisoners have no constitutional right to a transfer to a less restrictive section of a facility); *see also*, *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (holding that prisoners have no liberty interest in avoiding transfer to another prison or in being transferred to a particular prison). As such, Plaintiff's housing status within the prison is not a constitutionally protected right and he cannot show harm from his placement in the SHU. Count I fails to state a cognizable retaliation claim and is DISMISSED.

### 2. *Count II*

Plaintiff complains that Warden Shinn failed to respond to his grievances. First, although Plaintiff labels this a retaliation claim, he provides no facts showing that Warden Shin refused to answer his grievances *because* Plaintiff filed a grievance, which is the protected conduct presumably at issue. Nor does he allege facts showing Shinn's alleged refusal to answer his grievances chilled his First Amendment rights. Plaintiff continued to file grievances and pursue the required steps in FDC-Honolulu's administrative process. He then filed

the present action when his grievances were ignored.  There is no basis for finding a "retaliation" claim in Count II.

Moreover, while Plaintiff's allegation that Warden Shinn refused to answer his grievances may have bearing later, as justification for any failure to administratively exhaust his claims, it does not otherwise state a cognizable constitutional claim.  *See, e.g.*, *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.").  A prisoner's right to petition the government "does not guarantee a response to the petition or the right to compel government officials to act on" the petition.  *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also*, *Velasquez v. Barrios*, 2008 WL 4078766, *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action.").  Warden Shinn's alleged inaction regarding Plaintiff's grievances is an insufficient basis to state a constitutional claim.  Count II is DISMISSED.

### 3.    *Count III*

Plaintiff alleges that Defendant Cline retaliated against him by filing disciplinary charges regarding Plaintiff's participation in a prison hunger strike.  Taking Plaintiff's allegations as true, a plausible inference can be made that Cline intended to prevent Plaintiff from exercising his First Amendment right to free speech by participating in a hunger strike, and that this chilled those rights without advancing a legitimate correctional goal.  Plaintiff is entitled to offer evidence in support of this claim.  Count III shall go forward against Defendant Cline.

## C.    Count IV: Free Exercise of Religion

Plaintiff claims he "has not been able to see an Imam since changing [his] religion to Islam."  FAC, Doc. No. 14, PageID #48.  Plaintiff complains that chaplains only visited the prison once per month during his first four months, allegedly in violation of Bureau of Prisons ("BOP") policy, and that Chaplain Urasaki allowed kosher meals to be substituted for halal meals.[2]  Plaintiff also states that he "had difficulty" getting a Koran, a

---

[2] "Halal foods are foods that Muslims are allowed to eat or drink under Islamic Shariah [law].  The criteria specify both what foods are allowed, and how the food must be prepared.  The foods addressed are mostly types of meat and animal tissue." *See* http://en.wikipedia.org/wiki/Halal.

kufi,[3] and other religious books.  *Id.*  He alleges these incidents violated his right to practice his religion.

The First Amendment guarantees the right to the free exercise of religion.  *Cruz v. Beto*, 405 U.S. 319, 323 (1972).  "The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security."  *O'Lone v. Shabazz*, 482 U.S. 342, 348 282 (1987).  To establish a free exercise violation, a prisoner must show that a defendant burdened the practice of his religion by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests.  *See Freeman v. Arpaio*, 125 F.3d 732, 736 (9th Cir. 1997) *overruled in part on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).  To state a constitutional violation, "the interference with one's practice of religion must be more than an inconvenience; the burden must be substantial and an interference with a tenet or belief that is central to religious doctrine."  *Id.* at 737 (internal quotation marks and citation omitted).  A prisoner may be inconvenienced in the practice of his or her faith so long as the governmental conduct

---

[3] A kufi is a short, brimless, rounded cap worn by Christians, Muslims, and African Jews in Africa, Asia and in the "African diaspora."  *See* http://en.wikipedia.org/wiki/Kufi.

does not prohibit the prisoner from "participating in the mandates of his religion." *Id.*

While an inmate who adheres to a minority religion must be afforded "reasonable opportunities" to exercise his religious freedom, *Cruz*, 405 U.S. at 322 n.2, prison officials have no obligation "to provide inmates with the chaplain of their choice." *Hartman v. Calif. Dept. of Corr. and Rehabilitation*, 707 F.3d 1114, 1122 (9th Cir. 2013) (dismissing inmates' allegations that they were denied a Wiccan chaplain for failure to "show that they have been deprived a "reasonable opportunity" to freely exercise their faith."); *Ward v. Walsh*, 1 F.3d 873, 880 (9th Cir. 1993).

Plaintiff concedes that chaplains visited FDC-Honolulu monthly from September to January, and more often thereafter. He admits he has a Koran and a kufi, and does not elaborate on the "difficulties" he allegedly encountered receiving these items. He alleges no facts suggesting that he was unable to practice the tenets of Islam based on these alleged delays or that Defendants substantially burdened the practice of his religion. Plaintiff fails to state a cognizable First Amendment claim regarding the lack of an Imam, monthly chaplain visits, and difficulties he encountered obtaining a Koran or a kufi. These claims are DISMISSED.

Accepting that there is a significant religious difference between kosher and halal meals,[4] and that observing a halal diet is a tenet of his faith, Plaintiff alleges sufficient "facts to state a claim that is plausible on its face" regarding this claim. *See Twombly*, 550 U.S. at 570. Plaintiff identifies as a Muslim, states that part of the practice of his religion requires him to follow a halal diet, and asserts that Chaplain Urasaki arbitrarily substituted a kosher diet with a halal diet. This states a plausible claim that Urasaki failed to accommodate Plaintiff's religiously based request for a halal diet. This claim shall proceed against Urasaki.

**D. Count V: Violation of Prison Rules or the Eighth Amendment**

In Count V, Plaintiff claims that Cline violated his civil rights when he disregarded SHU rules allegedly requiring that inmates be provided with two shirts, two boxers, and two pairs of socks weekly. Plaintiff claims that "[a]t one point we were in the same cloth[e]s for (5) days straight." FAC, Doc. No. 14, PageID #49. A violation of prison rules is not cognizable under *Bivens*, because *Bivens* actions provide relief only for violations of the United States Constitution or laws of the

---

[4] Kosher meats are generally considered halal, due to the similarity between both methods of slaughtering and the similar principles of kosher meat which are still observed by the observant Jews today. See http://www.justislam.co.uk/product. (retrieved June 12, 2014). The court leaves this issue to further adversary proceedings where permissible evidence may be introduced.

United States, not for the violation of prison rules. *See Hydrick*, 500 F.3d at 987; *West*, 487 U.S. at 48 (1988).

To the extent Plaintiff asserts an Eighth Amendment violation, this claims also fails. The Eighth Amendment prohibits the imposition of cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Adequate clothing is one of life's necessities that prison officials must provide. *Helling v. McKinney*, 509 U.S. 25, 32 (1993). Indeed, "[t]he denial of adequate clothing can inflict pain under the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415, 1421 (9th Cir. 1994), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 483–84 (1995).

Prison conditions do not violate the Eighth Amendment, however, unless they amount to "unquestioned and serious deprivations of basic human needs" or the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) (defining the objective requirement of an Eighth Amendment violation). "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoners' interest or safety." *Whitely v. Albers*, 475 U.S. 312, 319 (1986) (internal quotations and citations

14

omitted).  That is, a prison official's actions must also be subjectively "deliberately indifferent."  *Farmer v. Brennan*, 511 U.S. 825, 826 (1994).  Temporary unconstitutional conditions of confinement do not normally rise to the level of constitutional violations.  *See Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1314–15 (9th Cir. 1995).

Failure to provide Plaintiff a change of clothes every three days, and on one occasion requiring him to wear the same clothes for five days, while perhaps unhygienic, uncomfortable, and restrictive, does not constitute cruel and unusual punishment.  Conditions of confinement must be more than uncomfortable to violate the Eighth Amendment.  *See Rhodes*, 452 U.S. at 347.  Plaintiff does not adequately allege that the denial of change of clothes was objectively sufficiently serious or subjectively deliberately indifferent to his health or safety. Count V is DISMISSED for failure to state a claim.

**E.    Count VI: Denial of Telephone Calls**

Plaintiff claims that Defendant Potts twice refused his request to call the Office of the Ombudsman and denied his "written request" to speak with his criminal defense attorney. In *Valdez v. Rosenbaum*, the Ninth Circuit Court of Appeals held that a prisoner has no liberty interest in access to a telephone and there is no procedural due process violation when the applicable rules mandated "reasonable access to a telephone" and

gave prison officials discretion to determine what access was reasonable.  302 F.3d 1039, 1045 (9th Cir. 2002).  The court also held that there is no substantive due process violation, because a restriction on an inmate's telephone access does not amount to impermissible punishment.  *Id.* at 1045-47.  The court stated that the First Amendment right at issue is "the right to communicate with persons outside prison walls" and that a telephone is merely one means of exercising this right.  *Id.* at 1048.  Applying the four-factor test of *Turner v. Safley*, 482 U.S. 78 (1986), the court concluded that the restriction on the plaintiff's telephone access did not violate the First Amendment.  *Id*. at 1049.  *See Strandberg v. City of Helena*, 791 F.2d 744, 747 (9th Cir. 1986) (holding that an inmate's right to communicate is subject to rational limitations in the face of legitimate security interests).

Plaintiff does not allege that Potts denied him all communication with the Ombudsman and his attorney.  Rather, Plaintiff alleges only that Potts denied his requests to contact the Ombudsman by telephone twice, and denied a written request to telephone his criminal defense attorney once.  This is insufficient for the court to plausibly infer that Potts violated Plaintiff's constitutional or statutory rights to communicate with his attorney or others.  Moreover, Plaintiff's claim regarding limited telephone access to his defense attorney is

barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because a successful ruling on this claim would necessarily imply the invalidity of Plaintiff's ongoing criminal proceedings. *See Valdez*, 302 F.3d at 1049. Plaintiff should address this claim in his pending criminal action. Count IV is DISMISSED for Plaintiff's failure to state a claim.

**F.    Count VII: Denial of Medical Care**

Plaintiff alleges that FDC-Honolulu Nurse Lidge denied him "reasonable medical care," when Lidge told him that someone would see him for a stye in his eye, yet Plaintiff has still not received medical care for his eye. FAC, Doc. No. 14, PageID #51. Plaintiff alleges that the stye remains on his eye and that he is suffering mental stress.

Prison officials violate the constitution if they are "deliberately indifferent" to an inmate's serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (same); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010). To successfully allege that inadequate or negligent medical care constitutes cruel and unusual punishment, a plaintiff must show "a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain" and that "the defendant's response to the need was deliberately indifferent."

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).  Deliberate

indifference "is satisfied by showing (a) a purposeful act or

failure to respond to a prisoner's pain or possible medical need

and (b) harm caused by the indifference." *Id.*  That is, the

prison official "knows of and disregards an excessive risk to

inmate health or safety; [and] the official must both be aware of

facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the

inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Accepting that a stye is a serious medical condition

and that failure to treat Plaintiff's eye has caused him pain and

could result in further harm, Plaintiff sufficiently states an

Eighth Amendment violation.  *See Jett*, 439 F.3d at 1096 (9th Cir.

2006) (delay of, or interference with, medical treatment can

amount to deliberate indifference).  Count VII shall be served on

Defendant Lidge.

## G.    Count VIII:  Discrimination

Plaintiff claims Warden Shinn discriminated against him

by denying SHU inmates the same commissary items that are

available to the general population.  The Fourteenth Amendment

"is essentially a direction that all persons similarly situated

should be treated alike." *City of Cleburne v. Cleburne Living

Ctr.,* 473 U.S. 432, 439 (1985).  To state an equal protection

claim, a plaintiff must demonstrate that the defendant

intentionally discriminated against him based on his membership in a protected class, *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001), or that defendant intentionally treated him differently from similarly situated individuals and that this differential treatment had no rational relationship to a legitimate state purpose, *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*).  Under the second theory, a plaintiff must allege that (1) he is a member of an identifiable class; (2) he was intentionally treated differently than others similarly situated; and (3) there is no rational basis for the differing treatment.  *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005).

This allegation does not state a claim.  Plaintiff is in the SHU and therefore, he is not similarly situated with inmates in general population.  Plaintiff alleges no facts from which the court can infer that Warden Shinn intentionally treated him differently than other SHU inmates.  Accordingly, count VIII is DISMISSED.

## IV.  <u>LEAVE TO AMEND</u>

Plaintiff's First Amended Complaint is DISMISSED IN PART as discussed above.  Counts III, IV, and VII state cognizable claims against Defendants Cline, Urasaki, and Lidge and may be served.  Counts I, II, III, V, VI, and VIII, insofar as they name Defendants Shinn, Sterns, Reiser, and Potts, are

dismissed with leave to amend for Plaintiff's failure to state a claim. Plaintiff may file an amended complaint on or before **July 16, 2014**, curing the specific deficiencies noted in Counts I, II, III, V, VI, and VIII, if possible.

In the alternative, Plaintiff may elect to proceed with Counts III, IV, and VII against Defendants Cline, Urasaki, and Lidge. If Plaintiff elects to proceed only on these claims against Defendants Cline, Urasaki, and Lidge, he should notify the court on or before **July 16, 2014**. If Plaintiff fails to timely file an amended complaint or notify the court of his intent on or before **July 16, 2014**, the court will nonetheless order service of the First Amended Complaint on Defendants Cline, Urasaki, and Lidge, and the remaining claims and Defendants will be dismissed.

If Plaintiff elects to file an amended complaint, it must contain short, plain statements explaining how Defendants violated his rights in light of the court's discussion. Plaintiff is reminded that an amended complaint's allegations may not "contradict[] any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). An amended complaint cannot allege facts inconsistent with the challenged pleading. *Id.* at 296-97.

The amended complaint must designate that it is the "Second Amended Complaint," and must be retyped or rewritten in

its entirety on court-approved forms; it may not incorporate any part of the original or First Amended Complaints by reference. *Ferdik v. Bonzelet*, 963 F.2d 1258 (9th Cir. 1992). Claims "that have been dismissed with leave to amend and are not repled in the amended complaint will be considered waived." *Id.* at 928.[5]

### V.  CONCLUSION

1.  The Complaint is DISMISSED IN PART for Plaintiff's failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Specifically, Plaintiff's claims in Counts III, IV, and VII against Defendants Cline, Urasaki, and Lidge state cognizable claims for relief. Plaintiff's claims in Counts I, II, III, V, VI, and VIII, against Defendants Shinn, Sterns, Reiser, and Potts, are dismissed with leave to amend for failure to state a claim.

2.  Plaintiff may file a second amended complaint on or before **July 16, 2014**, curing the specific deficiencies noted in Counts I, II, III, V, VI, and VIII, if possible. In the alternative, and in light of the court's discussion above, Plaintiff may stand on his claims against Defendants Cline, Urasaki, and Lidge in Counts III, IV, and VII. If Plaintiff elects to stand on these claims, he must notify the court of his

---

[5] Claims that have been dismissed without leave to amend need not be repled in an amended complaint to preserve them for appeal. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 925, 928 (9th Cir. 2012).

decision on or before **July 16, 2014**. If Plaintiff fails to notify the court of his decision or to file a timely second amended complaint, the court will order the First Amended Complaint and this Order served on Defendants Cline, Urasaki, and Lidge.

3. The Clerk of Court is DIRECTED to forward a copy of the court's prisoner civil rights complaint and instructions to Plaintiff so that she may comply with this order.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 16, 2014.



_/s/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States District Judge

_Adkins v. Shinn_, 1:14-cv-00156 LEK/KSC; 2014 scrng J:\Denise's Draft Orders\LEK\Adkins 14-156 lek (dsm C in part, lv amd).wpd

22